UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------x

UNITED STATES OF AMERICA,

    -against-

Dwayne STONE, et al.,

                    Defendants.

----------------------------------------------------x

**MEMORANDUM AND ORDER**
05-CR-401

GLASSER, United States Senior District Judge:

On February 4, 2008, the jury found the defendant James McTier guilty of thirteen of the fourteen counts alleged against him in the superseding indictment in this case.[1] Mr. McTier was convicted of racketeering and racketeering conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1962(c) & (d) (Counts One and Two), and the murder in aid of racketeering of an individual named Ricky Tubens, in violation of 18 U.S.C. § 1959(a) and N.Y. Penal L. § 125.25(1), ten other counts stemming from his gang-related criminal activity. Currently pending before the Court is Mr. McTier's motion, pursuant to Federal Rule of Criminal Procedure 33(a) ("Rule 33"), to vacate his conviction for Count Ten or, in the alternative, to preclude the government from proceeding with Count Ten as a capital count in the penalty phase of Mr. McTier's trial, on the basis of the jury's inconsistent verdict which found Mr. McTier guilty of Count Ten, but found that Racketeering Act Six under Counts One and Two, which involved the same murder in violation of the same section of the New York Penal Law, was not proven against him. For the reasons stated

---

[1] All references to the "superseding indictment" are to the Seventh Superseding Indictment, filed December 27, 2007 (docket no. 279).

below, Mr. McTier's motion is denied.

## BACKGROUND

James McTier is one of three defendants named in the superseding indictment in this case, which alleges various criminal activity, including robbery, murder, and drug dealing, undertaken by the defendants in connection with their membership in or association with the Folk Nation gang operating in the Brownsville area of Brooklyn, New York. Mr. McTier was charged with, inter alia, racketeering and racketeering conspiracy in violation of RICO and several counts of murder in aid of racketeering, including one count, Count Ten, which involved the murder of Ricky Tubens. The Tubens murder was also alleged as Racketeering Act Six for both of the RICO counts. The portion of the superseding indictment alleging Racketeering Act Six stated:

> On or about September 22, 2000, within the Eastern District of New York, the defendant JAMES MCTIER, with intent to cause the death of Ricky Tubens, caused his death, in violation of Section 125.25(1) of the New York Penal Law.

Sup. Ind. ¶ 15 (Count One); see also id. ¶ 32 (incorporating all thirteen racketeering acts alleged in Count One into Count Two). Count Ten of the superseding indictment alleged the same murder as an independent offense, stating as follows:

> On or about September 22, 2000, within the Eastern District of New York, the defendant JAMES MCTIER, also known as "JD," for the purpose of maintaining and increasing position in the Folk Nation, an enterprise engaged in racketeering activity, did knowingly and intentionally murder Ricky Tubens, in violation of Section 125.25(1) of the New York Penal Law. (Title 18, United States Code, Sections 1959(a)(1) and 3551 et seq.)

Id. ¶ 46.

On January 7, 2008, trial commenced before this court for Mr. McTier and his two co-defendants, Dwayne Stone and Sharief Russell. After approximately three weeks

of trial and several days of deliberations, the jury returned a verdict on Monday,

February 4, 2008.  The jury convicted Mr. McTier on Counts One, Two, and Ten, as well

as all but one of the other counts alleged against him; however, the jury concluded that

Racketeering Act Six was not proven against McTier under Count One or Count Two,

but convicted him of those counts on the basis of the other racketeering acts that it

found to be proved beyond a reasonable doubt.  Because the government had filed a

notice of intent to seek the death penalty against Mr. McTier in the event of his

conviction,[2] the Court scheduled the penalty phase to commence on February 12, 2008.

On February 6, 2008, Mr. McTier filed the pending Rule 33 motion, seeking to

vacate his conviction or preclude the government from asserting Count Ten as a capital

count during the penalty phase.  Mr. McTier's motion is premised upon the fact that the

jury's verdict of guilty on Count Ten is patently inconsistent with its determination that

Racketeering Act Six was not proven, a fact to which this Court drew the parties'

attention immediately after the verdict was announced.  While conceding the

government's point that the presence of an inconsistent verdict does not entitle a

criminal defendant to vacatur of a conviction as a matter of law, he nevertheless urges

this court "in the interests of justice" to exercise its discretion under to Rule 33 to vacate

the conviction, arguing, <u>inter alia</u>, that this departure from the usual legal rule is

justified by the fact that the stakes are qualitatively different in a death penalty case than

in the usual criminal cases in which the law regarding inconsistent verdicts has

developed.  Memorandum of Law in Support of James McTier's Rule 33 Motion

---

[2]      <u>See</u> Notice of Intent to Seek the Death Penalty as to James McTier, filed January 14, 2007 (docket no. 125); Amended Notice of Intent to Seek the Death Penalty, filed January 5, 2008 (docket no. 313).

("McTier Mem."), filed February 6, 2008 (docket no. 315), at 3. Mr. McTier also argues that his motion should be granted because, since the jury's verdict finding Racketeering Act Six not proven as to the two RICO counts did not preclude Mr. McTier's conviction for racketeering and racketeering conspiracy, one common justification for refusing to vacate an inconsistent verdict– that the inconsistency may be the product of the jury's decision to grant leniency to a defendant by nullifying a charge of which he should logically have been convicted– cannot be present in this case.

## DISCUSSION

Rule 33(a) states in relevant part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Second Circuit has recognized that "Rule 33 confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice," United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992), but has cautioned that the district court "must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (quoting Sanchez, 969 F.2d at 1414). The circumstances presented by this case are not sufficiently extraordinary to warrant the relief that Mr. McTier seeks.

### 1. Inconsistent Verdicts Do Not Require Vacatur

Mr. McTier acknowledges that the general rule of law applicable to this situation holds that an inconsistent verdict does not require vacatur of the defendant's conviction, notwithstanding the fact that that conviction cannot logically be reconciled with the jury's verdict on another count. This rule has deep roots in the history of American jurisprudence, going back at least as far as Judge Learned Hand's decision in Steckler v.

4

United States, 7 F.2d 59 (1925), in which the Second Circuit affirmed the defendant's

conviction for unlawful possession of liquor despite the fact that the jury acquitted him

on two counts of illegal sales of liquor and one count of maintaining a public nuisance.

The court acknowledged that the verdicts were inconsistent, because the defendant

could not be guilty of unlawful possession unless it were proved that he intended to

illegally sell the liquor in his possession,[3] but affirmed the conviction on the basis of its

observation that

> [t]he most that can be said in such cases is that the verdict shows that either
> in the acquittal or the conviction the jury did not speak their real conclusions,
> but that does not show that they were not convinced of the defendant's guilt.
> We interpret the acquittal as no more than their assumption of a power which
> they had no right to exercise, but to which they were disposed through lenity.

> That the conviction may have been the result of some compromise is, of
> course, possible; but to consider so is to consider too curiously, unless all
> verdicts are to be upset on speculation.

Id. at 60.  The Supreme Court adopted Judge Hand's reasoning in Dunn v. United

States, 284 U.S. 390, 391 (1932) (Holmes, J.),  another Prohibition-era case in which the

jury convicted the defendant of maintaining a public nuisance by "keeping for sale at a

specified place intoxicating liquor," but acquitted him on other counts involving the

unlawful possession and sale of such liquor.  Justice Holmes's majority opinion affirmed

the defendant's conviction, holding that "[c]onsistency in the verdict is not necessary,"

and citing Steckler for the proposition that, while "the verdict may have been the result

of compromise, or of a mistake on the part of the jury. . . verdicts cannot be upset by

---

[3]      The court noted that the defendant was a druggist who was authorized to possess liquor
for business purposes; it was therefore necessary in order to sustain a conviction for unlawful possession
that the jury conclude that the liquor in his possession was intended for illicit sales rather than for lawful
purposes.

speculation or inquiry into such matters." Id. at 393-94. In United States v. Powell, 469 U.S. 57, 63 (1984), the Court reaffirmed Dunn's holding and chastised "recent decisions in the Courts of Appeals [that] have begun to carve exceptions out of the Dunn rule." The Court reiterated Dunn and Streckler's point that "inconsistent verdicts. . . should not necessarily be interpreted as a windfall to the Government at the defendant's expense," because "[i]t is equally possible that the jury, convinced of guilt," arrived at the inconsistent verdict "through mistake, compromise, or lenity. . . ." Id. at 65. The Court found this fact to be especially important because, while the defendant is free to appeal a conviction, the government is constitutionally barred from appealing an erroneous acquittal, and further noted that even if some inconsistent verdicts do go to the defendant's disadvantage, distinguishing those cases from cases in which lenity or error in favor of the defendant was the source of the inconsistency "would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." Id. at 66. Finally, the Court "note[d] that a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." Id. at 67. Because the prosecution must not only convince the jury of the defendant's guilt beyond a reasonable doubt, but must also convince the trial and appellate courts that the evidence it submitted was legally sufficient to persuade a rational jury beyond a reasonable doubt, a further layer of protection against jury irrationality in the form of vacatur of inconsistent verdicts was not necessary to protect the defendant's rights. Id.; see also United States v. Zane, 495 F.2d 683, 690 ("It is well settled that even plainly inconsistent verdicts, simultaneously rendered are the jury's

6

prerogative.  The rule. . . is that consistency in jury verdicts is not required."); <u>United</u>

<u>States v. Chang An-Lo</u>, 851 F.2d 547, 560 (2d Cir. 1988) (<u>Dunn</u> and <u>Powell</u> "clearly

preclude the challenges presented here as to the alleged inconsistency of the verdicts

reached by the jury in this case.").

At a hearing held on February 7, 2008, and in a letter filed the following day,

counsel for McTier directed the Court's attention to another case which bears a

substantial superficial resemblance to the factual situation presented in this case:

<u>United States v. Infelise</u>, 813 F. Supp. 599 (N.D. Ill. 1993).  In that case, the defendant

Salvatore DeLaurentis was charged with, <u>inter alia</u>, racketeering in violation of RICO

(Count One of the <u>Infelise</u> indictment) and conspiracy to murder an individual named

Hal Smith for the purpose of maintaining the business of the Ferriola Street Crew , a

racketeering enterprise with which Mr. DeLaurentis was associated (Count Eight of the

<u>Infelise</u> indictment).  The conspiracy to murder Smith was charged against DeLaurentis

both as an independent crime and as a racketeering act in support of the RICO case

against him (Racketeering Act Seventeen).  The jury convicted DeLaurentis on the RICO

count, but found that the racketeering act involving the conspiracy to murder Smith had

not been proved against him.  However, the jury also convicted him on the independent

conspiracy count, which involved the same elements and the same evidence as the

racketeering act.  After the verdict was read but before polling the jury, the district court

held a conversation at sidebar with the attorneys.  All parties were concerned about the

obvious inconsistency in the jury's verdict, but despite the district court's solicitation of

suggestions as to how to ensure that the verdict was accurate without influencing the

jury, none of the attorneys could offer a solution other than a simple polling that did not

make special reference to the inconsistency.  When polled, each juror affirmed that the verdict read in court represented his or her own verdict; however, three days later, four of the jurors appeared on local television and said that the jury had never deliberated on Count Eight and that the guilty verdict indicated on the verdict form was an error.  After conferring with counsel, the district court interviewed all of the jurors the following week, asking, in substance, only whether the verdict form reflected the jury's true verdict as to Count Eight.  The response from the jurors was mixed.  Three jurors indicated that the jury had reached a unanimous verdict of guilty as to that count, while three others stated that the jury had reached a unanimous verdict of not guilty as to the same count.  One juror stated that he had voted guilty, but the jury was not unanimous, and five more stated either that no vote on Count Eight was taken or that they could not recall whether a vote was taken on that count.  Thus, the district court concluded that nine of the twelve jurors had stated that the verdict of guilty on Count Eight was incorrectly reported to the court.

In light of the information provided by the jurors, the district court ultimately granted DeLaurentis's motion to vacate his conviction on Count Eight of the indictment. In addition to the fact that a majority of the jurors stated that the verdict reported in court did not reflect the unanimous consensus of the jurors, the court based its decision on two other factors, the first of which was that the verdict finding Racketeering Act Seventeen not proven as to DeLaurentis but convicting him on Count Eight was "clearly inconsistent" and therefore "disturbing."  813 F. Supp. at 607.  The court acknowledged the Supreme Court's holding in Powell and the Seventh Circuit's decision in United States v. Brown, 934 F.2d 886 (7th Cir. 1991), which applied the Powell decision.

However, the district court distinguished the case before it on the ground that neither

Powell nor Brown addressed a situation "where a jury rendered inconsistent verdicts on

charges with virtually identical elements." Id. at 608.  The court wrote that

> [i]n cases like Powell and Brown, the courts recognized the importance of
> upholding juries' verdicts, even when these verdicts were inconsistent.
> This makes sense where juries rendered verdicts on different charges with
> different elements.  However, the Brown rationale does not fit squarely
> within the facts of the instant case.  Given that the charges in Count 8 and
> Racketeering Act 17(a) were virtually identical, it would be particularly odd
> for the jury in this case to intend these verdicts to be inconsistent.  While
> courts may not be reluctant to let inconsistent verdicts stand when they
> are based on charges with different elements, this court is hesitant to apply
> the Brown court's rationale where the verdicts are based on charges with
> virtually identical elements.

Id.  Second, the court noted the fact that the evidence against four of DeLaurentis's co-

defendants as to whom the jury was unable to reach a verdict on Count Eight was

actually stronger than the evidence presented to connect DeLaurentis himself to the

conspiracy; each of the other four defendants were identified in testimony as having

been present on the night of the murder and having played a specific role in the

commission of the act, while DeLaurentis was connected to the conspiracy only on the

basis of having made a threat to the victim nearly a year before the murder.  As an aside,

the court noted that the verdict sheet supplied to the jury stated only the number of each

count without providing a description, except as to Count One and the racketeering acts

alleged thereunder.  The court commented that "[i]n hindsight, it may have been

advantageous to spell out the substance of each count in the same manner that the

racketeering acts and unlawful debts were spelled out for Count 1." Id. at 609 n. 24.

After undertaking an extensive discussion to demonstrate that its interviews of the

jurors was consistent with Federal Rule of Evidence 606(b), the court then held that

"the verdict published in open court on March 10, 1992 was not the true verdict or no verdict was reached at all." Id. at 612. The court therefore vacated DeLaurentis's conviction under Count Eight, but cautioned that "such an extreme measure as vacating a verdict should not be considered under anything but unusual circumstances. To apply this court's ruling to anything but the most extreme examples would surely and wrongfully threaten the deliberative process." Id. at 613.

While the factual situation presented to the court in Infelise bears some resemblance to that presented here, numerous bases for distinction render the district court's decision of limited applicability in Mr. McTier's situation. As an initial matter, it is essential to note that the ultimate basis of the Infelise court's decision to vacate DeLaurentis's conviction on Count Eight was not that the jury's verdict was inconsistent, but rather that the verdict failed to reflect the unanimous consensus of the jurors; the fact of the inconsistency was simply cited as one piece of evidence in support of the conclusion that the jurors had not intended to enter the verdict that was initially reported to the court. Unlike Infelise, there is no evidence here that the verdict read in open court finding Mr. McTier guilty of the murder in aid of racketeering of Ricky Tubens did not reflect the true unanimous verdict of the jury. Moreover, unlike Infelise, the verdict sheet used by the jury in this case clearly identified the nature of each count, making a mistaken verdict less likely. See Verdict Sheet at 7 (specifying Count Ten as "Murder in Aid of Racketeering of Ricky Tubens"). Likewise, the Court's instructions to the jury adequately informed them of the substantive law controlling each count. Finally, it appears that the Infelise court erred as a legal matter when it asserted that there are no cases in which an inconsistent verdict has been upheld where the charges to

10

which the inconsistent verdict was returned have identical elements.[4]  As noted above,

Justice Holmes's decision in <u>Dunn</u>, which was cited extensively and expressly reaffirmed

in <u>Powell</u>, upheld the jury's verdict which convicted the petitioner for maintaining a

nuisance by maintaining a location for the sale of liquor, but acquitted him of the

charges of possession and sale of liquor, despite the fact, as noted by Justice Butler in

his dissent, that conviction for maintaining a common nuisance required the jury to

determine that the defendant possessed and sold liquor at the location charged.  284

U.S. at 394 (Bulter, J., dissenting).  Indeed, even in <u>Powell</u>, the Supreme Court rejected

the Ninth Circuit's conclusion that an exception to the <u>Dunn</u> rule should exist in

situations in which the jury acquits the defendant on a predicate felony count but

convicts on a compound felony of which the predicate felony is a necessary element,

holding that the Ninth Circuit's exception "threatens to swallow the rule."  <u>Powell</u>, 469

U.S. at 68.  This Court can see no qualitative distinction between the exception rejected

in <u>Powell</u> and the exception proposed by <u>Infelise</u>.  In short, the district court in <u>Infelise</u>

faced a much different situation than this Court, made  its decision to vacate

DeLaurentis's conviction on a different basis than that urged by McTier in this case, and

its legal analysis of the issue of inconsistent verdicts appears to have been erroneous in

light of controlling Supreme Court precedent.  Thus, it provides no basis for granting

Mr. McTier's motion, disregarding the teaching of the United States Supreme Court in

<u>Dunn</u> and <u>Powell</u>.

　　　　In obedience to those Supreme Court decisions, it is clear that Mr. McTier is not

---

[4]　　　<u>See Infelise</u>, 813 F. Supp. at 608 ("Defendants have not provided and this court has not found any cases where a jury rendered inconsistent verdicts on charges with virtually identical elements.").

entitled to vacatur of his conviction under Count Ten.  Counsel for Mr. McTier correctly

point out that this case differs somewhat from the situation in <u>Dunn</u> and <u>Powell</u> in that

it is impossible to assume that the inconsistency in the jury's verdict was motivated by a

decision to exercise leniency with respect to Mr. McTier.  While in the usual case of an

inconsistent verdict, "it is unclear whose ox has been gored" by the jury's error, it is

possible to exclude the influence of lenity as an explanation for the inconsistency in this

case because the jury ultimately convicted Mr. McTier on Counts One and Two,

notwithstanding its conclusion that Racketeering Act Six was not proven. <u>Powell</u>, 469

U.S. at 65.  Because the jury was aware, as instructed by the Court, that it needed to find

only two racketeering acts proved, in addition to the other elements of the RICO

offenses charged, in order to convict Mr. McTier on those counts, and indeed did convict

him on those counts, it is clear that it could not have been motivated by a desire to

nullify Mr. McTier's liability on the RICO counts by  finding Racketeering Act Six not

proven.  If the inconsistency was motivated by a desire to show leniency, one would

expect the verdicts to be reversed– <u>i.e.</u>, finding Racketeering Act 6 under Counts One

and Two to be proven, but acquitting McTier on Count 10.  However, the fact that the

inconsistency cannot be attributed to a conscious and rational decision to exercise lenity

toward Mr. McTier in this case does not justify departing from the <u>Dunn</u> rule.  As noted

in <u>Dunn</u> and <u>Powell</u>, intentional lenity is not the only means by which a defendant might

benefit from an inconsistent verdict; the proposition that the jury's finding that

Racketeering Act Six was not proven was the result of error remains as likely as the

proposition that his conviction under Count Ten was erroneous.  Moreover, as <u>Powell</u>

observed, there are strong reasons for respecting an inconsistent verdict other than the

fact that it is impossible to tell which side has benefitted from the inconsistency. With

no indication that the verdict read in court did not represent the true unanimous verdict

of the jury, any inquiry that this Court might make into the source of the inconsistency

would constitute an unwarranted and inappropriate intrusion into the exclusive

province of the jury to find the facts of the case. See United States v. Zane, 495 F.2d

683, 691 (2d Cir. 1974) ("The validity accorded to [inconsistent] verdicts recognizes the

sanctity of the jury's deliberations and the strong policy against probing into its logic or

reasoning, which would open the door to interminable speculation."). Additionally, the

procedural rights already enjoyed by Mr. McTier are sufficient to protect him from

irrationality on the part of the jury; in addition to proving its case to the jury beyond a

reasonable doubt, the government was required to demonstrate to this Court that the

evidence submitted was sufficient for a reasonable jury to reach a verdict of guilty with

respect to each count,[5] and the Court of Appeals for the Second Circuit will no doubt be

called upon to review that question as well as any other alleged errors in these

proceedings. In short, while the Court has no explanation for the inconsistency, even if

the inconsistency does go to the defendant's advantage, distinguishing this case from

cases in which lenity or error in favor of the defendant was the source of the

inconsistency "would be based either on pure speculation, or would require inquiries

into the jury's deliberations that courts generally will not undertake." Powell, 469 U.S.

at 66. The Court does not find the inconsistent verdict sufficient to remove this case

from the scope of the rule set forth in Dunn and Powell.

---

[5]     Indeed, this Court has already heard and denied a motion by Mr. McTier to dismiss the charges against him pursuant to Federal Rule of Criminal Procedure 29(a).

**2.      Discretionary Vacatur of McTier's Conviction on Count Ten Is
            Not Warranted**

As previously noted, Mr. McTier concedes that he is not entitled as a matter of
right to vacatur of his conviction, but argues that two aspects of this case aside from the
inconsistent verdict itself justify the exercise of the Court's discretion under Rule 33 to
grant such a remedy.  Mr. McTier's contentions on this point lack merit.

Mr. McTier first argues that the Court's instructions were confusing to the jury
because the Court combined its instruction on Count Ten with its instructions on Counts
Twelve (Murder in Aid of Racketeering of Jamel Washington) and Eighteen (Murder in
Aid of Racketeering of Tabitha Buckman), both of which alleged a violation of New
York's aiding and abetting statute, N.Y. Penal L. § 20.00, while Count Ten did not.  Mr.
McTier's argument is mistaken.  He points to the portion of the transcript in which the
Court stated, "I have already instructed you as to the applicable laws of murder and
aiding and abetting, and I incorporate all those instructions here and you are to apply
them here," Tr. at 5171, quoted in McTier Mem. at 6, and argues that "[t]he only way to
reconcile these inconsistent verdicts is that the jury acquitted defendant on the
racketeering acts because he was charged as acting individually, while it erroneously
believed that it could convict defendant on Count Ten for aiding and abetting– a theory
that the government never presented or argued at trial."  McTier Mem. at 6.  However,
as the government points out in opposition to the pending motion, Mr. McTier neglects
to mention that in the immediately preceding paragraph, the Court made clear that the
aiding and abetting theory applied only to those counts in which it was specifically
charged:

14

> The fourth element the government must prove beyond a reasonable doubt is that the defendant committed the alleged crime of violence. That is, <u>with respect to count ten, the Defendant James McTier murdered Ricky Tubens</u>; with respect to count 11 [<u>sic</u>], Dwayne Stone murdered Jamel Washington; with respect to count 14, James McTier murdered Shamell Ayatollah; <u>with respect to 18, Defendant James McTier himself committed or aided and abetted the murder of Tabitha Buckman</u>; and <u>with respect to count 20, the Defendant Sharief Russell himself murdered or aided and abetted the murder of Randolf Gatlin</u>.

Tr. at 5171 (emphasis added). The Court's instructions regarding the applicability of aiding and abetting liability to the various counts were therefore perfectly clear, and in any case, "it is well established that a trial judge may properly give an aiding and abetting instruction even if the indictment does not expressly charge a violation of 18 U.S.C. § 2." <u>United States v. Mucciante,</u> 21 F.3d 1228, 1234 (2d Cir.1994) (citations omitted); <u>see also</u> <u>United States v. Eisner</u>, 59 Fed. Appx. 379, 381-82 (2d Cir. 2003) (citing <u>Mucciante</u>). Thus, the Court's charge provides no basis for vacating Mr. McTier's conviction.

Second, Mr. McTier argues that the fact that he is facing the death penalty creates a "need for heightened concerns for reliability" in the proceedings against him. McTier Mem. at 12. The Court does not deny Mr. McTier's premise that the death penalty is a qualitatively different punishment than any term of incarceration, and is the most serious penalty that the law may impose. Nevertheless, this fact does not remove this case from the scope of the <u>Dunn</u> rule, nor does it justify the Court in exercising its discretion under Rule 33 to vacate McTier's conviction on Count Ten when there is no basis, beyond the bare fact of inconsistency, upon which to conclude that the verdict does not represent the unanimous judgment of the jury. Other courts have held that inconsistent verdicts are acceptable even in a death penalty case. For example, in

Mahaffey v. Schomig, 294 F.3d 907 (7th Cir. 2002), the court affirmed the denial of a

state prisoner's petition, pursuant to 28 U.S.C. § 2254, for relief from his conviction and

death sentence in an Illinois state court.  The petitioner argued that his conviction

should be vacated on the basis of an Illinois state law which required that inconsistent

jury verdicts be set aside, arguing that the jury's verdict at the eligibility phase of his

sentencing hearing was inconsistent.  The Illinois Supreme Court denied his appeal,

finding that the verdict was not inconsistent; after the district court denied the

prisoner's habeas corpus petition, the Seventh Circuit affirmed, holding that"even

assuming that the verdicts were legally inconsistent, the Illinois Supreme Court's

decision not to grant a new trial did not involve an unreasonable application of United

States Supreme Court precedent. The United States Supreme Court has held that

inconsistent verdicts are constitutionally tolerable."  Id. at 921 (citing Los Angeles v.

Heller, 475 U.S. 796, 804 (1986); Standefer v. United States, 447 U.S. 10, 25 (1980)).  In

United States v. Johnson, 223 F.3d 665 (2000), the Seventh Circuit reaffirmed that

holding, this time in the context of direct appeal by a federal prisoner who had been

sentenced to death.  Johnson argued that certain inconsistencies in the special verdict

form recommending the death penalty required that his death sentence be overturned.

Judge Posner, writing for a unanimous panel, rejected that argument.  The court

observed that "[t]he general rule, []the wisdom of which this case substantiates, is that

inconsistent findings in a jury verdict do not invalidate the verdict," and further noted

that the principle stated in Powell that the government's inability to challenge an

erroneously-granted acquittal undermines the argument that a defendant's conviction

should be vacated in the event of an inconsistent verdict "is applicable here, since the

government cannot appeal the jury's refusal to impose the death penalty."[6]  Id. at 675-76; see also Mapes v. Coyle, 171 F.3d 408 (6th Cir. 1999) (Upholding death penalty of state prisoner whom jury convicted of aggravated murder but acquitted of two death penalty "specifications," holding that even if the verdict was inconsistent, "Powell teaches that the inconsistent verdicts are viewed completely separately, and that no conclusion may be drawn from comparing the two.").  Thus, the fact that he faces the death penalty does not justify treating the inconsistent verdict in Mr. McTier's trial any differently than would be the case in any other prosecution.

The Court therefore concludes that Mr. McTier is not entitled to vacatur of his conviction under Count Ten pursuant to Rule 33.  For the same reason, Mr. McTier's request that the Court preclude the government from proceeding with Count Ten as a capital count during the penalty phase is also denied.

### 3.     McTier's Request to Re-Poll The Jury Is Denied

In a letter dated February 8, 2008, Mr. McTier submitted yet another request for relief in the alternative, asking the Court to consider identifying the inconsistency in the verdict and to re-poll the jury specifically as to Count Ten.  Although Mr. McTier does not identify the basis for this request, it is essentially a motion pursuant to Federal Rule of Criminal Procedure 31(d), which states that "[a]fter a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the

---

[6]     The Johnson court cautioned that "[o]f course, if the inconsistencies were such as to indicate that the verdict was a product of irrationality, it would have to be set aside," but held that the inconsistencies at issue did not indicate irrationality.  Id. at 676 (citing  18 U.S.C. § 3595(c)(2)(A) ("Whenever the court of appeals finds that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. . . the court shall remand the case for reconsideration under § 3593 or imposition of a sentence other than death.") (emphasis in Johnson)).  This issue is not present here, because McTier challenges inconsistent verdicts in the guilt phase of his trial rather than the penalty phase.

jurors individually.  If the poll reveals a lack of unanimity, the court may direct the jury

to deliberate further or may declare a mistrial and discharge the jury."  In <u>United States</u>

<u>v. Morris</u>, 612 F.2d 483, 489 (10th Cir. 1979), the Tenth Circuit noted that "[a]lthough

not expressly so stated in the rule, the power to repoll the jury is also among the judge's

discretionary powers. This power is most helpful where, for instance, the jury has been

confused by multiple parties or counts."  <u>Cf.</u> <u>United States v. Rastelli</u>, 870 F.2d 822, 835

(2d Cir. 1989) (Rule 31(d) permits a court to take "immediate corrective action where. . .

the jury's verdict is patently uncertain.").  <u>Morris</u> further noted that while the authority

to repoll the jury is discretionary, "[i]n any case upon the appearance of any uncertainty

or contingency in a jury's verdict, it is the duty of the trial judge to resolve that

doubt. . . ."  <u>Id.</u>; <u>see also</u> <u>Infelise</u>, 813 F. Supp. at 610-11 (citing <u>Morris</u>).  Unlike <u>Morris</u>,

however, in which the jury foreman originally voted guilty as to all five defendants but

then changed his verdict as to one defendant when polled, or <u>Rastelli</u>, in which the

foreperson stated while reading the verdict that something was wrong with the jury's

interpretation of the verdict form, there was no indication during the reading of the

verdict or the  jury poll in this case that the verdict read by the foreperson did not reflect

each juror's true verdict, and thus the unanimous verdict of the jury as to each count and

each racketeering act.  Thus, there is no "appearance of any uncertainty or contingency"

in the verdict to be resolved here, and Mr. McTier's motion to re-poll the jury as to

Count Ten is denied.

## CONCLUSION

For the reasons stated above, defendant James McTier's motion pursuant to Federal Rule of Criminal Procedure 33(a) is hereby DENIED.

SO ORDERED.

Dated:     Brooklyn, New York
           February 11, 2008

_____/s/_____

I. Leo Glasser
United States Senior District Judge

Copies of the foregoing order were electronically sent to:

Counsel for the Government

Morris J. Fodeman
Jeffrey H. Knox
Jason A. Jones

Assistant United States Attorneys for the Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820

Counsel for the Defendant

Adam D. Perlmutter
Law Offices of Adam D. Perlmutter, P.C.
260 Madison Avenue
Suite 1800
New York, NY 10016

Carl Jordan Herman
443 Northfield Avenue
West Orange, NJ 07052